UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

IN RE

JOSEPH DEREK TINGLE,                                        CASE NO. 17-30531
CHELSEY BROOKE TINGLE
DEBTORS

FARM CREDIT MID-AMERICA, PCA                                PLAINTIFF

v.                                                          ADV. NO. 18-03001

JOSEPH DEREK TINGLE,                                        DEFENDANTS
CHELSEY BROOKE TINGLE


MEMORANDUM OPINION AND ORDER

Farm Credit Mid-America, PCA moved for summary judgement on all counts in its Complaint. [ECF Nos. 26 – 28.] The Defendants, Derek and Chelsey Tingle, responded [ECF Nos. 41 – 42] and the matter is submitted for a decision. [ECF No. 40.] Farm Credit is granted summary judgment on its request to deny a discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(5). Summary judgment is denied on all other counts.

I. BACKGROUND.

Derek and Chelsey Tingle obtained loans from Farm Credit between 2009 and 2011 to support Derek's cattle and tobacco operations. The first loan was made on August 14, 2009, in the amount of $202,500 ("Note 7200"). [ECF No. 1, Exh. 1.] Note 7200 is secured by a lien on all equipment and crops. [*Id.*] As part of the application process, the Tingles provided a balance sheet dated June 24, 2009, that valued investments in growing crops at $478,125 and equipment at $134,550. [ECF No. 27-1 ("Moore Affidavit"), Exh. 2.]

Farm Credit made another loan to the Tingles on April 8, 2010, for $86,000 ("Note 1600"). [ECF 1, Exh. 2.] Note 1600 is secured by a lien on crop insurance proceeds, livestock,

1

equipment and crops. [*Id.*] As part of the application process, the Tingles provided a balance sheet dated December 31, 2009, that valued various cattle at $150,250, tobacco at $80,100, and equipment at $143,916. [Moore Affidavit, Exh. 4.]

On September 30, 2011, Farm Credit made a third loan to the Tingles for $25,000 ("Note 6600"). [ECF No. 1, Exh. 4.] Note 6600 is secured by a lien on livestock, equipment, and crops. [*Id.*] As part of the application process, the Tingles provided a balance sheet dated December 31, 2010, that valued various cattle at $198,200, tobacco at $148,750, and equipment at $204,666. [Moore Affidavit, Exh. 7.]

Farm Credit sued the Tingles in Henry Circuit Court after they defaulted on the notes and was granted judgment in the amount of $305,159.82 on September 12, 2014. [Moore Affidavit, Exh. 9.] The Tingles then filed a chapter 13 petition on October 7, 2014, which was dismissed without a discharge in 2016. [Case No. 14-30492, ECF No. 230.] Derek ceased his farming operations while the chapter 13 case was active. He testified that he liquidated his remaining farming assets after the case was dismissed. [*See* ECF No. 27-2 at 258.]

The Tingles filed the current chapter 7 case on November 22, 2017. The schedules list Farm Credit as an unsecured creditor with a claim for $180,000.00. [Case No. 17-30531, ECF No. 1 at 27.] Farm Credit filed this adversary proceeding seeking a determination that the Tingles' obligations are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (2)(B), (4), and (6). In the alternative, Farm Credit seeks denial of a discharge in the chapter 7 proceeding pursuant to 11 U.S.C. § 727(a)(3), (4), (5), and (7).

**II.  JURISDICTION AND SUMMARY JUDGMENT STANDARD.**

Jurisdiction is proper pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Civil Rule 56 allows entry of summary judgment if there is no dispute over the material facts and those facts support a judgment. FED. R. CIV. P. 56(a), made applicable by FED. R. BANKR. P. 7056. A fact is material if it would affect the outcome of the dispute under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court must assume all inferences from the facts in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

If there is an issue of fact related to intent or credibility determinations, then the claim is better suited for trial. "It is inappropriate for a court to make credibility determinations when considering a motion for summary judgment." *FDIC v. Jeff Miller Stables,* 573 F.3d 289, 295 (6th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000)); *see also Hoover v. Radabaugh,* 307 F.3d 460, 467 (6th Cir. 2002) ("When the defendants' intent is at issue, 'summary judgment is particularly inappropriate.'") (quoting *Marohnic v. Walker,* 800 F.2d 613, 617 (6th Cir. 1986)).

### III. DISCUSSION.

#### A. A Trial is Required to Resolve Farm Credit's § 523(a)(2)(A) Claim.

The first count in the Complaint asserts the Farm Credit debt is excluded from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Farm Credit argues for a finding of actual fraud based on an allegedly fraudulent scheme to transfer assets that occurred after the loans were made. [ECF No. 28 at 26-30.] The Debtors have provided explanations that deny any actual fraud occurred. Evaluation of the evidence on this count raises intent and credibility concerns that are the type best left for trial.

Therefore, summary judgment is denied on Farm Credit's claim for non-dischargeability pursuant to § 523(a)(2)(A).

**B. A Trial is Required to Resolve Farm Credit's § 523(a)(2)(B) Claim.**

The second count in the Complaint asserts the Farm Credit debt is excluded from discharge pursuant to § 523(a)(2)(B). This provision excludes discharge for money obtained by a statement in writing:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> …
> (B) use of a statement in writing—
>   (i) that is materially false;
>   (ii) respecting the debtor's or an insider's financial condition;
>   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>   (iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B). Farm Credit must prove these elements of the claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Farm Credit alleges the balance sheets that induced it to make the loans were materially false. Farm Credit argues this is confirmed in part by the Tingles' Response to Request for Admission No. 23. [ECF No. 28 at 31-32.] The Request asked the Tingles to admit they sold collateral listed on one or more balance sheets. [ECF No. 28 at 31-32.] The Tingles denied the Request and indicated: "None of those items were owned by the Defendants." [*Id.* at 32.]

A denial of ownership of collateral previously disclosed as owned does suggest a problem. But denial of a request for admission does not conclusively establish a fact. *See* FED. R. CIV. P. 36(b). Further, this was an example and more is required when the Tingles have suggested defenses (*e.g.*, the Tingles claim the balance sheets were prepared by Farm Credit, *see* Part E.5, *infra*).

4

Evaluating the evidence in the light most favorable to the Tingles requires further evaluation that is better left for trial. Therefore, summary judgment is denied on Farm Credit's claim for non-dischargeability pursuant to § 523(a)(2)(B).

### C. A Trial is Required to Resolve Farm Credit's § 523(a)(4) Claim.

The third count in the Complaint asserts the Farm Credit debt is non-dischargeable pursuant to § 523(a)(4). This provision excludes from discharge three types of debt: "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Farm Credit has failed to prove it is owed a type of debt that is covered by this provision; until it does so, it cannot prevail. *See generally Feldman v. Pearl (In re Pearl)*, 577 B.R. 513, 530 (Bankr. E.D. Ky. 2017) (explaining that proof of the existence of a debt covered by this provision is a prerequisite to judgment).

Farm Credit has not alleged that the Tingles were acting in a fiduciary capacity or that embezzlement occurred. Farm Credit's argument is that the Tingles' use of their collateral and any related proceeds is a larceny. [ECF No. 28 at 34.] Larceny requires a wrongful taking of property with the intent to use the property for the defendant's benefit. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). Derek testified at several points that he either gave Farm Credit the proceeds of any sale or he used the proceeds to protect Farm Credit's collateral. [*E.g.,* ECF No. 27-2 at 130.] Thus, there is a dispute over whether the Tingles used sale proceeds solely for their benefit. This is enough to survive the request for summary judgment on this issue.

Summary judgment is denied on Farm Credit's claim for non-dischargeability pursuant to § 523(a)(4).

**D. A Trial is Required to Resolve Farm Credit's § 523(a)(6) Claim.**

The fourth count in the complaint asserts that the Farm Credit debt is excepted from discharge pursuant to § 523(a)(6), which excludes from discharge any obligation caused by a "willful and malicious injury" to an entity or to property. 11 U.S.C. § 523(a)(6). The Tingles caused a willful and malicious injury if (1) they intended their actions; and (2) intended their actions to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998); *see also Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 (recognizing that *Kawaauhau* controls); *Tomlin v. Crownover (In re Crownover)*, 417 B.R. 45, 55 (Bankr. E.D. Tenn. 2009) (recognizing the two elements).

Farm Credit again refers to the allegedly false balance sheets and argues that the Tingles converted their assets by transferring them for less than reasonably equivalent value. [ECF No. 28 at 37.] The Tingles' intent is critical to this count and their credibility is best addressed at trial. For example, Derek's claim that he paid or intended to pay the proceeds of sales to Farm Credit [ECF No. 27-2 at 129-30] is impacted by, among other things, a credibility determination.

Summary judgment is denied on Farm Credit's claim for non-dischargeability pursuant to § 523(a)(6).

**E. Farm Credit Is Entitled to Judgment on Its Claim Seeking Denial of Discharge Based on the Failure to Keep or Preserve Records and Explain the Loss of Assets.**

The final count of the Complaint seeks denial of the discharge pursuant to § 727(a)(3), (4), (5) and (7). Summary judgment is granted pursuant to § 727(a)(3) and (a)(5), so an analysis of the other parts of § 727(a) is not necessary.

**1. Section 727(a)(3) and (5) Apply in this Action.**

Section 727(a)(3) provides that a court shall grant a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case … .

11 U.S.C. § 723(a)(3). Section 727(a)(5) provides that a court shall grant a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities … ." 11 U.S.C. § 723(a)(5).

The goal of § 727(a)(3) is to provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999)). The required compliance "removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt.'" *Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (quoting *Burchett v. Myers,* 202 F.2d 920, 926 (9th Cir. 1953)). The goal of § 727(a)(5) is similar, but it imposes strict liability when a debtor cannot explain a material loss of assets. *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).

**2. The Burden of Proof Starts with the Objecting Party and Shifts to the Debtor.**

Discharges are favored in bankruptcy, so the party objecting to discharge has the initial burden of proof under § 727(a)(3) and (5). FED. R. BANKR. P. 4005. The elements of a § 727(a)(3) claim require that the plaintiff:

> (1) offer evidence of the general nature of [the debtor's] business or personal financial position and the types of transactions about which recorded information is sought, (2) present evidence identifying the recorded information he alleges has been concealed, destroyed, mutilated, falsified or not kept or preserved by [the debtor], and (3) show how the missing recorded information 'might' enable [the

7

debtor's] actual financial condition or business transactions to be ascertained under the circumstances of the case.

*McDermott v. Neff (In re Neff),* Case No. 14-33442, Chapter 7, Adv. Pro. No. 15-3026, 2015 Bankr. LEXIS 4361, at *5 (Bankr. N.D. Ohio Dec. 28, 2015). Farm Credit needs to show the missing records are material to understanding the Tingles' financial status. *See Stiff*, 512 B.R. at 897. The burden then shifts to the Tingles to explain the failure to produce records. *See id*.

Under section § 727(a)(5), the plaintiff must "identify assets which the debtor at one time owned and claims, in his schedules, to no longer possess." *See Crocker v. Stiff (In re Stiff)*, 512 B.R. 893, 900 (Bankr. E.D. Ky. 2014). Judge Lee explained the important distinctions between § 727(a)(3) and (5) in *Stiff*:

> Section 727(a)(5), while serving a similar purpose to § 727(a)(3), differs from § 727(a)(3) in several respects. First, § 727(a)(5) concerns itself exclusively with the loss of assets, while § 727(a)(3) is not limited to records documenting the disposition of lost assets. Second, to prevail on a § 727(a)(5) action, a debtor must offer a satisfactory explanation of a loss of assets, whereas in a § 727(a)(3) action a debtor may prevail by showing only that his failure to keep or preserve records documenting the disposition of lost assets was reasonable. Third, a debtor can defeat a § 727(a)(5) action by offering persuasive testimonial explanations of his loss of assets, *see Buzzelli,* 246 B.R. at 117; *Losinski,* 80 B.R. at 470, while a testimonial explanation of lost assets will not defeat a § 727(a)(3) action absent a reasonable explanation of the absence of records of same.

*Id.*

Farm Credit does not need to prove that the Tingles acted with fraudulent intent under either provision. *See In re Settembre*, 425 B.R. 423, 431 (Bankr. W.D. Ky. 2010) (analyzing § 727(a)(3)); *Reed*, 310 B.R. 363 at 368 (2004) (analyzing § 727(a)(5)).

### 3. Farm Credit Has Satisfied Its Initial Burden of Proof.

Farm Credit points to large differences between assets owned by the Tingles shown on the balance sheets they provided and the Tingles' bankruptcy schedules.

The Tingles granted Farm Credit security interests in equipment, cattle, and crops. The difference between the disclosures on the December 31, 2010 balance sheet and the schedules filed in the Tingles' chapter 13 case is summarized in the following chart:

|  | 12/31/10 | 10/07/14 | (Decrease) |
|---|---|---|---|
| **Equipment** | $204,666 | $139,750 | ($64,916) |
| **Cattle** | $198,200 | $0 | ($198,200) |
| **Tobacco** | $148,750 | $0 | ($148,750) |
|  | $551,616 | $139,750 | ($411,866) |

The schedules filed by the Tingles in their chapter 7 proceeding show that they disposed of all remaining equipment after filing chapter 13 but before filing chapter 7. These differences are material, particularly because they exceed the amount of the debt. Further, these asset groups represent the primary assets used in and generated by Derek's farming operations, so an explanation of the reason for the dissipation of these assets and absence of records regarding the losses are necessary to understand the business.

Farm Credit has therefore satisfied its burden. The Tingles are now obligated to explain what happened to these assets and why they failed to produce financial records to avoid denial of discharge. The following discussion confirms the Tingles have not carried their burden to explain the significant losses in equipment, cattle, and tobacco, or their failure to produce records regarding these losses.

### 4. The Tingles Have Failed to Satisfy Their Burden to Explain Missing Records and Lost Assets.

The Tingles disputed facts in their response to the summary judgment motion and responded to the demand for judgment under § 523(a)(2). [ECF No. 41.] The Tingles did not specifically respond to the demand for judgment under any other counts, including the demand

for judgment under § 727(a)(3) and (5). Despite the lack of argument, all evidence was reviewed to determine the facts in the light most favorable to the Tingles.

The evidence presented by the Tingles is almost entirely testimonial explanations for the disappearance of assets. This provides little help under the § 727(a)(3) claim. Derek conducted farming operations during the relevant period, including raising cattle and crops. It is reasonable to expect him to maintain records of sales, particularly because the numbers involved are so large. But, as the subsequent discussion shows, he cannot produce documentation regarding cattle and crop sales, or transfers of equipment used in the farming operations. Further, the Tingles had a duty to preserve these records for a reasonable period. *See Stiff,* 512 B.R. at 898.

Testimonial explanations might provide more help under § 727(a)(5), *Stiff,* 512 B.R. at 900, but testimony is not always enough under either section. *See, e.g., Bond v. Burson*, No. 3:94-CV-502, 1996 U.S. Dist. LEXIS 22062, at *9-12 (E.D. Tenn. March 4, 1996) (discussing Sixth Circuit law that requires convincing evidence from the non-moving party). The non-moving party cannot simply refute an argument; it must provide some proof there is a triable issue of fact. *See* FED. R. CIV. P. 56(c)(1); *see also Sinclair v. Schriber,* 916 F.2d 1109, 1112 (6th Cir. 1990) ("Although the nonmoving party's evidence … need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts."). A motion for summary judgment is one way to challenge an opposing party to "put up or shut up" on a critical element of the case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1986); *see also Caruso v. Clemmens,* Civil Action No. 5:17-CV-325-KKC, 2018 U.S. Dist. LEXIS 188862, *4-5 (E.D. Ky. Nov. 5, 2018) (summary judgment is appropriate if the non-moving party fails to make a sufficient showing when he bears the burden of proof).

The following discussion shows the Tingles only provided statements that events occurred. There is no support backing up those bare assertions and the Tingles did not even attempt to explain the lack of records. General, unsubstantiated statements are not sufficient to explain away material discrepancies at the summary judgment stage. *See Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986).

> a. **The Tingles Have Not Explained the Decreased Value of Equipment Before the Chapter 13 Case Equal to Almost $65,000.**

The decrease in value of equipment from 2011 to the chapter 13 filing was $64,916. The only explanation in the record that addresses this decline in value is the reference to an expected sale of $43,500 worth of equipment in the December 31, 2010, balance sheet. [ECF No. 27-7, Exh. 3.] Derek testified that the equipment was sold prior to the chapter 13 petition date [ECF No. 27-6 at 96], but he did not provide the date of the sale, the amount of any proceeds, or link the proceeds of the sale to a payment made to Farm Credit.

The Tingles have not supported the existence of the alleged sale, so there is an unexplained and undocumented loss of equipment of $64,916. This is a material amount.

> b. **The Tingles Have Adequately Explained the Decreased Value of Equipment After the Chapter 13 Case.**

The decline in equipment value after the chapter 13 was $139,750. The loss of value between the bankruptcy cases is sufficiently explained. The Tingles auctioned most of their remaining farm equipment on April 4, 2016, for a gross price of $84,088.25. [Moore Affidavit, Exh. 10.] A comparison of the equipment identified in the chapter 13 schedules with the auction records shows that all equipment was auctioned except a few items valued on the schedules at $12,500. [*Compare* Chapter 13, ECF No. 133 at 4 *with* Moore Affidavit, Exh. 10.] Derek also

testified that several pieces of unsold equipment valued at $3,500 fell into disrepair. [ECF No. 42 at 4, ¶ 5.]

Therefore, the unexplained decrease in value of the equipment between the bankruptcy cases is approximately $9,000. This amount is not considered material.

### c. The Tingles Have Not Explained Losses from Cattle of Over $114,000.

The Tingles have provided some information supporting the $198,200 decrease in the value of cattle from 2011 to the chapter 13 filing. Derek testified that approximately one-third of his cattle died in 2011 and 2012. [ECF No. 42 at 4, ¶ 3.] One third of the value of cattle at the beginning of 2011 explains approximately $66,000 ($198,200 x 1/3) of the loss of value of the cattle.

Derek also testified that he transferred some cattle to his father in 2012 in exchange for his parents' help paying expenses. [ECF No. 27-6 at 42.] The Tingles produced checks showing Derek's parents paid $17,250 in expenses from February 1, 2013, through January 14, 2014. [ECF No. 42 at 13-16.] Accepting these explanations as true, the Tingles have explained $83,250 of the $198,200 loss in value of cattle. This still leaves $114,950 of the decline unaccounted for.

The only other information that explains the loss is Derek's testimony that he sold some cattle to stockyards. [ECF No. 27-6 at 40.] He also testified that any proceeds from sales of cattle, less proceeds used for production expenses, went to pay Farm Credit. [ECF No. 27-2 at 129-30.] But Derek did not provide any record of the sales or link any payments to the proceeds of such sales. Further, Schedule F to his federal tax returns from 2011 and 2012 does not identify any money received from livestock sales. [ECF No. 27-2 at 689, 694.]

Based on this, the Tingles have failed to explain a $114,950 decline in the value of their cattle. The unexplained decline is material in amount and as a percentage of the beginning cattle value on the balance sheet (58%).

### d. The Tingles Have Not Explained Losses from Tobacco of $17,992.

The decrease in the tobacco value from 2011 to the chapter 13 petition date was $148,750. On January 18, 2012, the Tingles received $79,955 in crop insurance proceeds, with a net distribution of $74,534.08. [ECF No. 27-2 at 209; ECF No. 28 at 23, n.4.] The record also shows the Tingles received $50,803.07 for 28,239 pounds of tobacco from Philip Morris between November 29, 2011, and January 10, 2012. [ECF No. 28 at 21-22.]

Derek testified that 2011 and 2012 were drought years. [ECF No. 42 at 5, ¶ 7.] This testimony might account for some portion of the resulting lost tobacco value. But the Tingles have provided no evidence to account for how much of this loss in tobacco value is attributable to a drought.

Giving credit for these factors leaves an unexplained decline in the value of the tobacco of $17,992, 12% of the beginning value on the balance sheet. The unexplained decline is possibly material on its own, but it has increased significance based on the previously described fluctuations. Therefore, records and an explanation are required. None were provided.

### 5. The Tingles Have No Financial Records or Explanations to Account for Lost Collateral Worth Nearly Two-Thirds of the Total Debt to Farm Credit.

The above analysis confirms that the Tingles have no records to explain a loss of value of collateral of almost $198,000 ($64,916 equipment; $114,950 cattle; $17,992 tobacco). Farm Credit claims its debt exceeds $315,000, so the unexplained losses are almost two-thirds of the obligation. This is a material amount that requires documentation and explanation pursuant to § 727(a)(3) and (a)(5).

13

The above analysis shows the Tingles received the benefit of the doubt wherever possible. Other information was also considered to see if the question should survive the request for summary judgment. For example, there are multiple deposits into Derek's checking account between 2012 to 2016 that could reflect some sale proceeds. But Derek did not identify any sale proceeds in the deposits. [ECF No. 27-2 at 171-175; *see also* ECF No. 42 at 5, ¶ 6.] Similarly, the Tingles did not trace any payments to Farm Credit in 2011 as a means of documenting and explaining the losses. [*See* Moore Affidavit, Exh. 13.]

The Tingles also argue that the loan officer assigned the monetary values used for the assets in the December 31, 2010 balance sheet and the amounts are wrong. [*See* ECF No. 41 at 3.] It is impossible to determine if any difference is material because the Tingles did not provide information to show the true value of the assets identified in the December 31, 2010 balance sheet.

The Tingles have not offered sufficient financial records or other evidence to justify the failure to keep, preserve and produce records. They have also failed to sufficiently explain the losses beyond general possibilities that provide little or no detailed information. Therefore, the Tingles have not met their burden. *See* FED. R. CIV. P. 56(e)(3); *see also Iberiabank v. Yocum (In re Yocum),* 488 B.R. 748, 754-58 (Bankr. N.D. Ala. 2013) (granting summary judgment to the plaintiff pursuant to § 727(a)(3) because the burden had shifted to the debtor to explain why he did not keep records, and the debtor did not offer any evidence); *Chusid v. First Union Nat'l Bank,* Civil Action No. 97-4134, 1998 U.S. Dist. LEXIS 479, at *11-17 (E.D. Penn. Jan. 21, 1998) (affirming summary judgment on § 727(a)(5) and holding that generalized explanations of losses without documentation are unsatisfactory).

Farm Credit is entitled to judgment on its request to deny discharge pursuant to § 727(a)(3) and (a)(5).

## IV. CONCLUSION.

Farm Credit has demonstrated that there are no genuine disputes as to material facts, and it is entitled to judgment as a matter of law, pursuant to § 727(a)(3) and (a)(5). Farm Credit has not proven that it is entitled to judgment as a matter of law on the remaining claims. A judgment will be entered in conformity with this opinion.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Wednesday, November 21, 2018**
(grs)